UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

VELINE HICKS,

                      **Plaintiff,**

      v.                                                  5:17-CV-0475

**THE CITY OF SYRACUSE, POLICE OFFICER
DAVID CRAW shield # 0258, and POLICE
OFFICER DAVID HART shield # 0149,**
sued herein in their capacity as individuals,

                      **Defendants.**
_____

**THOMAS J. McAVOY,**
Senior United States District Judge

# DECISION & ORDER

## I. INTRODUCTION

Plaintiff Veline Hicks ("Plaintiff") brought this action pursuant 42 U.S.C. §1983 asserting that Defendants Craw and Hart violated his rights secured by the Fourth and Fourteenth Amendments by using excessive force and/or failing to intervene to prevent excessive force during his arrest on May 15, 2014. *See generally* Compl., Dkt. No. 1. Plaintiff also alleges that the City of Syracuse ("the City") is liable for these constitutional violations. *See id.* Defendants move pursuant to Fed. R. Civ. P. 12(c) to dismiss the claim against the City. Dkt. No. 39. The Court has considered Defendants' motion and reply, Dkt. Nos. 39, 42, Plaintiff's opposition, Dkt. Nos. 40, 41, and will decide the motion without oral argument. For the reasons that follow, the motion is granted.

## II.     BACKGROUND[1]

Plaintiff is an African-American male who, at the relevant time, resided in the City of Syracuse, New York. Compl., Dkt. No. 1, ¶ 3. On May 15, 2014, Plaintiff and a friend were stopped by Defendants Craw and Hart while driving in Syracuse and ordered to get out of the vehicle. *Id.* ¶ 10. Plaintiff became nervous and, upon exiting the vehicle, began to run. *Id.* ¶ 11. He then "voluntarily stopped running and lied down on his stomach with his hands behind his head, and fingers crossed." *Id.* ¶ 12. As Defendants Craw and Hart approached, one attempted to deploy a taser but missed Plaintiff. *Id.* ¶ 13. When the officers reached Plaintiff, who was still on the ground, the officers "brutally attacked Mr. Hicks with kicks, punches, and by using their elbows and knees." *Id.* ¶14. The officers continued punching and kicking Plaintiff after he was handcuffed, *id.*, ¶17, and then lifted Plaintiff up and "slamm[ed] him back on the ground." *Id.* ¶ 18. Defendant David Craw then stated to Plaintiff: "See what happens to you n.....s when you run." *Id.* ¶ 19. Plaintiff was eventually taken to a hospital where he was diagnosed with several injuries, "including a post vitreous detachment, a broken rib, ligament damage and fractures on his left wrist, arm, and hand." *Id.* ¶ 24.

Plaintiff asserts that Defendants Craw and Hart violated his Fourth Amendment rights during the arrest by the use of excessive force and/or the failure to intervene to prevent the excessive force. *Id.* ¶¶ 27-37. He also asserts a claim of municipal liability against the City pursuant to *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). *Id.* ¶¶ 38-47. Plaintiff makes the following allegations in support of the *Monell* claim:

---

[1] For the purposes of this motion, the Complaint's factual allegations are assumed to be true. *See Fahs Constr. Group, Inc. v. Gray*, 2011 U.S. Dist. LEXIS 7822, at *5-6 (N.D.N.Y. Jan. 27, 2011).

39. Syracuse is liable to the plaintiff for having violated plaintiff's rights protected by the Fourth Amendment to the United States Constitution, more specifically his right to be free from the use of excessive and unreasonable force.

40. As a matter of *de facto* policy, Syracuse tolerates members of the SPD committing acts violating the Fourth Amendment rights of members of the African American community.

41. Syracuse operates and controls a police department with numerous members, insensitive and hostile to the African American community.

42. The SPD has had frequent instances of the use of gratuitous, unreasonable and excessive force against members of the African American community as well as other violations of that community's constitutional rights and still, Syracuse has failed to take effective action to curtail the aforementioned behavior by its officers.

43. It is the *de facto* policy of the SPD to tolerate excessive force and overt acts of racism by its officers against members of the African American community.

44. There are frequent complaints against the SPD to Internal Affairs and to the Citizens Review Board and the SPD takes no effective action to remedy the ongoing problem of SPD officers discriminating against and using excessive and unnecessary force against members of the African American community.

45. Due to the *de facto* racism within the SPD and Syracuse's tolerance thereof, plaintiff suffered the harms outlined herein.

46. Defendant Syracuse via its *de facto* policy of tolerating the abuse of African Americans, caused plaintiff to sustain physical injuries, including permanent and non-permanent physical injuries, pain and suffering, scarring, deformity, emotional harms, to wit, the fear he would continue to be beaten and otherwise abused and he was otherwise harmed.

Dkt. No. 1, ¶¶ 39-46.

Defendants move pursuant to Fed. R. Civ. P. 12(c) to dismiss the *Monell* claim.

### III. STANDARD OF REVIEW

In deciding Rule 12(c) motion, the Court employs the same standards as those

applicable to Rule 12(b)(6) motion. *Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191, 193 (2d Cir. 2015). On a Rule 12(b)(6) motion, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotation marks omitted). This tenet does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements ... are not entitled to the assumption of truth." *Id.; see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(stating that a court is "not bound to accept as true a legal conclusion couched as a factual allegation").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"The role of the court at this stage of the proceedings is . . . merely to determine whether the plaintiff's factual allegations are sufficient to allow the case to proceed." *Doe v. Columbia Univ.*, 831 F.3d 46, 59 (2d Cir. 2016). However, unless a plaintiff's well-pleaded allegations have "nudged [his] claims across the line from conceivable to plausible," the complaint must be dismissed. *Twombly*, 550 U.S. at 570. Stated differently, a plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level."

4

*Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013).

## IV. DISCUSSION

### a. *Monell* Liability

It is well-established that a municipality may not beheld liable under § 1983 on the basis of *respondeat superior*. *See e.g.*, *Connick v. Thompson*, 563 U.S. 51, 60 (2011); *Board of County Commissioners v. Brown*, 520 U.S. 397, 403 (1997); *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986); *Monell,* 436 U.S. at 665-83, 691; *Outlaw v. City of Hartford*, 884 F.3d 351, 372 (2d Cir. 2018). Rather, municipalities are responsible only for "their own illegal acts," *Pembaur*, 475 U.S. at 479 , and are not vicariously liable for civil rights violations perpetrated by their employees. *See Monell*, 436 U.S. at 691. "Plaintiffs who seek to impose liability on local governments under § 1983 must prove, *inter alia*, that the individuals who violated their federal rights took 'action pursuant to official municipal policy.'" *Outlaw*, 884 F.3d at 372 (quoting *Connick*, 563 U.S. at 60 (interior quotation marks and citation omitted)). The policy must be "the moving force of the constitutional violation," not merely a contributing factor. *Monell*, 436 U.S. at 694; *see Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008)("[A] plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the alleged injury.")(internal quotation marks omitted). The Supreme Court has clarified that in order to impose municipal liability, there must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see City of Okla. v. Tuttle*, 471 U.S. 808, 824 n.8 (1985) ("The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement

5

that the particular policy be the 'moving force' behind a constitutional violation. There must at least be an affirmative link between[,] [for example,] the training inadequacies alleged, and the particular constitutional violation at issue.")(plurality opinion); *Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *12 (S.D.N.Y. Mar. 26, 2015) ("[T]here must be a direct causal link between a municipal policy or custom and the alleged constitutional deprivation")(internal quotation marks omitted).

> A municipal policy or custom may be established by any of the following:
>
> (1) a formal policy, officially promulgated by the municipality, [*Monell*, 436 U.S.] at 690; (2) action taken by the official responsible for establishing policy with respect to a particular issue, *Pembaur*, 475 U.S. at 483-84; (3) unlawful practices by subordinate officials so permanent and widespread as to practically have the force of law, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127–30 (1985) (plurality opinion); or (4) a failure to train, supervise, or discipline that amounts to "deliberate indifference" to the rights of those with whom the municipality's employees interact. [*City of Canton*, 489 U.S. at 388].

*Kavanaugh v. Vill. of Green Island*, No. 814CV01244BKSDJS, 2016 WL 7495813, at *6 (N.D.N.Y. Dec. 30, 2016).

At this stage, Plaintiff is not required to prove his *Monell* claim, but his claim must be sufficiently plead to make out a plausible claim for relief. *See Twombly*, 550 U.S. at 570. In order to survive dismissal, Plaintiff "cannot, through conclusory allegations, merely assert the existence of a municipal policy or custom, but 'must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists.'" *Tieman*, 2015 WL 1379652, *13 (quoting *Santos v. New York City*, 847 F. Supp.2d 573, 576 (S.D.N.Y. 2012)). "Put another way, mere allegations of a municipal custom, a practice of tolerating official misconduct, or inadequate training and/or supervision are insufficient to demonstrate the existence of such a custom unless supported by factual details." *Id.*; *see*

6

also *Thomas v. City of Troy*, 293 F. Supp.3d 282, 298 (N.D.N.Y. 2018)("For a *Monell* claim to survive a motion to dismiss, a plaintiff must allege sufficient factual detail and not mere boilerplate allegations that the violation of the plaintiff's constitutional rights resulted from the municipality's custom or official policy.")(internal quotation marks and citation omitted)*;* *Culpepper v. City of New York*, 2018 WL 1918619, at *8 (S.D.N.Y. Apr. 20, 2018).[2]

### b. Plaintiff's *Monell* Claim

Plaintiff appears to allege municipal liability under two related theories: 1) that constitutional violations including excessive force by SPD officers against African-Americans were sufficiently widespread and tolerated by the City such to support a finding that they constituted an unofficial, *de facto* policy; and 2) that the City was deliberately indifferent to such abuses as demonstrated by its failure to discipline SPD officers. As discussed below, Plaintiff fails to plead sufficient facts to plausibly support either theory.

### 1. *De Facto* Policy

Under Plaintiff's first theory, "*Monell*'s policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its

---

[2]In *Culpepper*, the Southern District wrote:

Even at the motion to dismiss stage, a plaintiff "cannot merely allege the existence of a municipal policy or custom, but 'must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists.'" [*Triano v. Town of Harrison, NY*, 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012)](collecting cases). Courts have routinely dismissed complaints that contain "quintessentially boilerplate language echoing the requirements contained in *Monell*." *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 302 (S.D.N.Y. 2015) (collecting cases.)

2018 WL 1918619, at *8.

7

subordinates' unlawful actions." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007). "Such a pattern, if sufficiently persistent or widespread as to acquire the force of law, may constitute a policy or custom within the meaning of *Monell*." *Id.*; *see Monell*, 436 U.S. at 690-91; *Jeffes v. Barnes*, 208 F.3d 49, 61 (2d Cir. 2000). However, "isolated acts of excessive force by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability." *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012) (citing *Villante v. Dep't. of Corr.*, 786 F.2d 516, 519 (2d Cir.1986)).

Plaintiff's claim of a *de facto* policy of the SPD tolerating excessive force against African-Americans is based upon the conclusory allegation that "[t]he SPD has had frequent instances of the use of gratuitous, unreasonable and excessive force against members of the African American community as well as other violations of that community's constitutional rights." Compl. ¶ 43. While Plaintiff alleges "frequent instances" of racially motivated conduct by Syracuse police officers, he does not allege that this conduct was widespread or pervasive. Further, even drawing the inference that these "frequent instances" rose to the level of being "widespread or pervasive," Plaintiff does not allege when the underlying acts occurred. If the underlying acts purportedly resulting in the *de facto* policy did not occurred prior to Plaintiff's arrest, it cannot plausibly be concluded that the *de facto* policy was the moving force behind the alleged use of excessive force on May 15, 2014. While the Court understands that, pre-discovery, it may be difficult to determine precisely when the underlying events occurred, Plaintiff must at least *allege* that the purported *de facto* policy existed prior to the alleged excessive force on May 15, 2014.

8

Without such a temporal allegation, it cannot plausibly be concluded that the was a direct causal link between the *de facto* policy and the purported constitutional deprivations. Therefore, the *Monell* claim on this theory must be dismissed. *See Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir.1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiffs' injury, *Monell* prohibits a finding of liability against the City."). Because it is possible that Plaintiff could assert facts supporting the existence of a pre-May 15, 2014 *de facto* policy, the dismissal is with leave to re-plead.[3] *See* Fed. R. Civ. P. 15(a)(2)("The court should freely give leave [to amend] when justice so requires."); *Brooks v. City of Utica*, 275 F. Supp. 3d 370, 383 (N.D.N.Y. 2017)("[W]hen a complaint is dismissed for the first time pursuant to Rule 12(c), leave to amend before reviewing the proposed amended pleading should typically be withheld only if amendment would be futile—namely, if it is clear from the facts alleged that the events in question cannot give rise to liability.").

### 2. Failure to Discipline

Plaintiff's second theory is that the City, through its failure to discipline officers who engaged in excessive force against African-Americans, exhibited deliberate indifferent to the rights of African-Americans involved in police encounters. The *Monell* claim on this theory fails for essentially the same reasons as the *de facto* policy theory.

"[M]unicipal inaction such as the persistent failure to discipline subordinates who

---

[3] If Plaintiff elects to replead, he must assert, pursuant to the requirements of Fed. R. Civ. P. 11(b)(3)("By presenting to the court a pleading, . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."), sufficient factual allegations directed to the deficiencies addressed above.

violate [persons'] civil rights could give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct." *Batista*, 702 F.2d at 397; *see also Outlaw*, 884 F.3d at 380 ("[A] municipal policy of deliberate indifference to the use of excessive force by police officers may be shown by evidence that the municipality had notice of complaints of the use of such force but repeatedly failed to make any meaningful investigation into such charges."); *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) (policy may be inferred from "evidence that the municipality had notice of but repeatedly failed to make any meaningful investigation into charges that police officers had used excessive force in violation of the complainants' civil rights"); *Turpin v. Mailet*, 619 F.2d 196, 201 (2d Cir. 1980), *cert. denied*, 449 U.S. 1016, 101 S. Ct. 577, 66 L. Ed.2d 475 (1980)("where senior personnel have knowledge of a pattern of constitutionally offensive acts by their subordinates but fail to take remedial steps, the municipality may be held liable for a subsequent violation if the superior's inaction amounts to deliberate indifference or to tacit authorization of the offensive acts"). But a failure to discipline constitutes a municipal custom "only where the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) (citing *City of Canton*, 489 U.S. at 390). "[D]eliberate indifference is a stringent standard of fault." *Connick*, 563 U.S. at 61 (internal quotation marks omitted). "The operative inquiry is whether the facts suggest that the policymaker's inaction was the result of a 'conscious choice' rather than mere negligence." *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 128 (2d Cir. 2004) (quoting *City of Canton*, 489 U.S. at 389).

Plaintiff's allegations of "frequent complaints against the SPD to Internal Affairs and

10

to the Citizens Review Board" does not specify how many complaints were filed, how frequently such complaints were made, whether the complaints concerned the use of excessive force, whether the complaints resulted in findings against officers for the use of excessive force, or whether the allegations in the complaints were such that the City should have - but failed to - conduct further investigations. Without allegations of this type, it is mere speculation that the complaints demonstrated an obvious need to discipline officers who used excessive force in the past, or that the failure to do so constitutes deliberate indifference to the rights of African-Americans involved in police encounters. Further, "'the stringent causation and culpability requirements set out in [*City of Canton*] have been applied to . . . claims for failure to supervise and failure to discipline." *Tieman*, 2015 WL 1379652, at *19 (citing *Reynolds*, 506 F.3d at 192). By failing to allege when the complaints were made to Internal Affairs and the Citizens Review Board, Plaintiff fails to allege facts plausibly supporting the conclusion that the City's failure to discipline SPD officers was the moving force behind the purported constitutional deprivations on May 15, 2014. Like with the *de facto* policy theory, the *Monell* claim on the "failure to discipline" theory will be dismissed with leave to re-plead.

## V. CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss the *Monell* claim in this matter, Dkt. No. 39, is **GRANTED**, and the *Monell* claim against the City of Syracuse (Third Claim for Relief) is **DISMISSED** with leave to re-plead. If Plaintiff elects to re-plead this claim, he must do so within twenty (20) days of the date of this Decision and Order. If Plaintiff fails to file an amended complaint within twenty (20) days of the date of this Decision and Order, the Clerk may terminate the City of Syracuse from this action without

11

further order of the Court.

**IT IS SO ORDERED.**

Dated:November 30, 2018

_Thomas J. McAvoy_
Thomas J. McAvoy
Senior, U.S. District Judge