**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**VELINE HICKS,**

                      **Plaintiff,**

    v.                                                        5:17-CV-475
                                                                   (TJM/ATB)

**POLICE OFFICER DAVID CRAW, and**
**POLICE OFFICER DAVID HART,**

                      **Defendants.**
_____

**Thomas J. McAvoy,**
**Sr. U.S. District Judge**

### DECISION & ORDER

Plaintiff Veline Hicks alleges that Defendants David Craw and David Hart, City of Syracuse Police Officers, used excessive force when they arrested him. He filed a Complaint pursuant to 42 U.S.C. § 1983. After motion practice and discovery, Defendants filed a motion for summary judgment. See dkt. # 48. The parties have briefed the issues and the Court has determined to resolve the matter without oral argument.

**I.**    **BACKGROUND**

This case concern events that occurred on May 15, 2014 in the City of Syacuse, New York. On that date, at approximately 12:50 a.m., Defendants Craw and Hart, Officers in the Syracuse Police Department, were on patrol in a Department vehicle in the 700 Block of Carbon Street. Defendants' Statement of Material Facts ("Defendants'

Statement"), dkt. # 48-17, at ¶ 1.[1] Defendants contend that they noted a white Jeep Liberty driving towards them with its high-beam lights activated, a violation of New York law. Id. at ¶ 2. Plaintiff denies that he had his high beams activated. Plaintiff's Response to Defendant's Statement of Material Facts ("Plaintiff's Response"), dkt. # 52-3, at ¶ 2. Craw, who was driving the vehicle, turned the police car around, accelerated to get behind the Jeep, and activated the patrol car's emergency lights. Defendants' Statement at ¶ 3.

Plaintiff was operating the Jeep Liberty. Id. at ¶ 4. He did not immediately respond to the emergency lights, but began slowing a little towards the curb line before pulling away. Id. at ¶ 5. Plaintiff claims that he slowed down "to make sure no cars were around out of a safety concern." Plaintiff's Response at ¶ 5. Defendants contend that Craw turned on the car's spotlight in an effort to illuminate Plaintiff's vehicle and alert him to the police presence, and Plaintiff continued down the street anyway. Defendants' Statement at ¶ 6. Plaintiff contends that he pulled over when he realized that police were behind him with their lights on, but that he did not see the lights until he pulled over. Plaintiff's Response at ¶ 6.

Craw testified that he shined the spotlight into the driver's side mirror to illuminate the inside of the Jeep. Defendants' Statement at ¶ 7. He and Hart both allegedly observed Plaintiff reaching around in the car, "moving frantically and aggressively." Id. Plaintiff insists that he did nothing wrong. Plaintiff's Response at ¶ 7. Craw's training and experience as a police officer led him to believe Plaintiff's movements in the car were an

---

[1] Both sides have submitted the statements of material facts with citations to the record required by the Local Rules. The Court will cite to the Defendants' statement for facts which are undisputed. Where the facts are in dispute, the Court will note that dispute.

2

attempt to secrete or destroy evidence before contact with the police. Defendants' Statement at ¶ 8. Nervous, Craw allegedly told Hart that, in light of Plaintiff's behavior, "'we've got to be careful. He may have reached for a weapon.'" Id. at ¶ 9. After Craw gave a two-second burst of the car's emergency siren, Plaintiff pulled his car to the side of the street and stopped in the 800 block of Carbon Street. Id. at 10.

Craw again shined his spotlight in the driver's side mirror; he again alleges he saw Plaintiff anxiously moving around the driver's seat. Id. at ¶ 11. Those actions made Craw suspicious that Plaintiff was accessing a weapon. Id. Craw and Hart got out of their vehicle. Id. at ¶ 12. Craw claims he began to move towards the Jeep in an "arc," making "a wide 'cut like a pie kind of action'" towards that vehicle's driver's side. Id. at ¶ 13. Plaintiff disputes this claim. Plaintiff's Response at ¶ 13. Hart approached the passenger side of the Jeep at the same time, though Plaintiff did not observe that approach. Defendants' Statement at ¶ 14; Plaintiff's Response at ¶ 14.

After leaving the car, Craw claims he saw Plaintiff moving around in his seat and reaching for the center console. Defendants' Statement at ¶ 15. Plaintiff denies he was nervous, fidgeted in the seat, or moved around to reach something in the back of the vehicle. Plaintiff's Response at ¶ 15. Hart alleges he also saw Plaintiff moving around in the Jeep. Defendants' Statement at ¶ 16. He couuld not see Plaintiff's hands, he claims. Id.

Craw claims he ordered Plaintiff to show his hands. Defendants' Statement at ¶ 17. Plaintiff denies he ever heard such a command. Plaintiff's Response at ¶ 17. Craw contends that Plaintiff failed to comply, but Plaintiff insists no such command occurred. Defendants' Statement at ¶ 18; Plaintiff's Response at ¶ 18. Craw insists that he repeated

3

the command to show his hands, and Plaintiff again denies that such a command occurred. Defendants' Statement at ¶ 19; Plaintiff's Response at ¶ 19. The parties likewise disagree over whether Plaintiff refused to comply with this supposed second command. Defendants' Statement at ¶ 20; Plaintiff's Response at ¶ 20.

Defendants contend that Plaintiff followed this alleged second refusal to comply by speeding away into the oncoming lane of traffic, squealing his tires. Defendants' Statement at ¶ 21. At the time, Craw and Hart were both about fifteen feet behind the white Jeep, parallel to each other. Id. at ¶ 22. When Plaintiff pulled away, he knew that police had already stopped him. Id. at ¶ 23. He testified differently at his criminal trial. Id. at ¶ 24.

Craw and Hart returned to their patrol vehicle, alerted dispatch that the driver of the white Jeep had pulled away, and began pursuit of that vehicle. Id. at ¶ 25. The officers contend they saw Plaintiff commit numerous traffic violations during the pursuit, including speeding, failing to keep right, failing to stop at stop signs, and reckless driving. Id. at ¶ 26. As Plaintiff approached the intersection of Kirkpatrick and 1st North Streets, he slowed down, proceeded into the oncoming traffic lane, opened the car door, and exited the vehicle, which was still moving. Id. at ¶ 27. The Jeep struck a tree in front of 716 Kirpatrick Street. Id.

When he exited the moving vehicle, Plaintiff ran down 1st North Street. Id. at ¶ 28. Craw stopped the police vehicle, and he and Hart pursed Plaintiff on foot. Id. at ¶ 29. Defendants contend that Craw began pursuit about twelve to fifteen feet behind Plaintiff, with Hart following about fifteen to twenty feet behind Plaintiff. Id. at ¶ 30. Craw alleges he commanded Plaintiff to stop and get down on the ground. Id. at ¶ 31. Plaintiff denies

4

Craw issued such a command.  Plaintiff's Response at ¶ 31.

Craw contends that, as Plaintiff entered the front yard of 801 1st North Street, Craw saw Plaintiff reach towards his waistband.  Defendants' Statement at ¶ 33.  He testified that he believed Plaintiff was reaching for a weapon.  Id. at ¶ 34.  Continuing to chase Plaintiff, Craw contends he reached for his Taser and deployed the device; he claims he was hoping that he could prevent Plaintiff from reaching for his waistband.  Id. at ¶ 35.  Both Taser probes missed.  Id.  Plaintiff contends that no one deployed a Taser at him until he stopped running and dropped to his knees.  Plaintiff's Response at ¶ 35.  He alleges, without naming the particular officer, that "Defendant officer shot the taser to Plaintiff's head."  Id.

After Craw missed his Taser shot, he reholstered the device and continued after Plaintiff.  Id. at ¶ 36.  Craw claims he then saw Plaintiff trip and fall to ground in the yard at 809 1st North Street.  Id.  Plaintiff alleges that he voluntarily stopped running and dropped to his knees.  Plaintiff's Statement at ¶ 36.  Craw contends that Plaintiff ran between fifty and seventy-five yards before he stopped; Plaintiff contends that nothing in the record addresses how far he ran.  Defendants' Statement at ¶ 37; Plaintiff's response at ¶ 37.

The parties disagree about what happened once Plaintiff stopped running. Defendants contend that Plaintiff, after falling to the ground, "put his hand under his torso and under his face."  Id. at ¶ 38.  Craw claims that he believed Plaintiff put his hands underneath his body to "access a weapon."  Id. at ¶ 39.  He further alleges that Plaintiff then tried to use his legs to push himself under the front porch of the residence at 809 1st North Street.  Id. at 40.  To prevent Plaintiff from getting under the porch, Craw contends, he grabbed Plaintiff's clothing at the waist.  Id. at ¶ 41.  While Plaintiff may have put his

5

hands behind his head with his figures interlocked, Defendants assert that he would not put them behind his back as officers directed. Id. at ¶ 42. Craw and Hart then allegedly commanded Plaintiff to quit resisting and put his hands behind his back. Id. at ¶ 43. Plaintiff did not comply, they claim. Id. at ¶ 44. In response, Hart placed himself on Plaintiff's right side and Craw put him self on the left side, attempting to handcuff Plaintiff. Id. at ¶ 45. Meanwhile, Plaintiff had his hands underneath his body and was kicking the Defendants. Id. Each officer admits that he administered knee strikes to Plaintiff's side in an attempt to subdue him. Id. at ¶¶ 46-47. Craw admits that he struck Plaintiff three or four times on the left side of his "rib cage hip area." Id. at ¶ 46. Hart admits that he struck Plaintiff three times in his right hip and thigh area. Id. at ¶ 47. The officers contend that they repeated their commands to Plaintiff to stop his resistance; he refused, but "continued flailing around and kicking his legs" at them. Id. at ¶ 48. Plaintiff admits that he put his hands behind his head with his fingers interlocked, and that he heard the command to quit resisting. Plaintiff's Response at ¶¶ 42-44. He denies that he attempted to crawl under the porch, kicked at Defendants, or heard any other commands but to stop resisting. Id. at ¶¶ 44-48.

Eventually, the officers handcuffed Plaintiff and placed him under arrest for unlawfully fleeing an officer, vehicle and traffic infractions, and reckless endangerment. Defendants' Statement at ¶¶ 49, 51. Officers also allegedly found drugs where Plaintiff had been laying on the ground and more on his person after a search. Id. at ¶¶ 54, 56. Plaintiff went to trial on the drug charges, where he denied possessing the drugs and alleged that officers had planted the drugs on him to cover up their use of excessive force. Id. at ¶¶ 68, 72. A jury found Plaintiff guilty of criminal possession of a controlled

6

substance in the third and fourth degrees, unlawfully fleeing a police officer in the third degree, reckless endangerment in the second degree, resisting arrest, and unlawful possession of marijuana. Id. at ¶¶ 81, 85, 89, 93, 101, 104.

After officers searched Plaintiff, he requested an ambulance. Id. at ¶ 57. The ambulance did not transport Plaintiff to the hospital. Id. at ¶ 58. Plaintiff alleges that Defendants "spoke to the ambulance and had the ambulance [drive] off." Plaintiff's Response at ¶ 58. The parties dispute whether Plaintiff refused treatment. Compare Defendants' Statement at ¶ 59 with Plaintiff's Response at ¶ 59. Plaintiff contends that he still could not "breathe, walk right and felt pains" after the ambulance left. Plaintiff's Response at ¶ 59.

Plaintiff was then transported to jail and booked. Defendants' Statement at ¶ 60. Plaintiff contends that he could not walk and had to lean against the wall at the jail. Id. at ¶ 61. Still, Plaintiff admits that the booking video shows "Plaintiff walking, sitting, removing his shoes and socks, standing and being searched all in a normal fashion." Id. at ¶ 62.

Plaintiff filed a Complaint in this action on May 1, 2017. See dkt. # 1. The Complaint named the City of Syracuse and Officers Craw and Hart as Defendants. Id. The Complaint, brought pursuant to 42 U.S.C. § 1983, raised three counts. Count One alleged excessive force in violation of Plaintiff's Fourth and Fourteenth Amendment rights. Count Two alleged a failure-to-intervene to prevent this excessive force, again in violation fo the First and Fourteenth Amendments. Count Three, raised only against the City of Syracuse, contended that Plaintiff's injuries were the result of a municipal policy or custom. Defendants filed a motion to dismiss the claims against the City of Syracuse, which the Court granted with leave to re-plead. See dkt. # 45. The Plaintiff did not file an

7

amended complaint, and at the close of discovery the remaining Defendants filed the instant motion for summary judgement. The parties have briefed the issues, and the matter is ripe for disposition.

## II.     LEGAL STANDARD

Defendants have filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials"

8

asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). Evidence must exist to support each element of the non-movant's claim; "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements are immaterial and cannot defeat a motion for summary judgment." Salhuddin v. Goord, 467 F.3d 263, 281 (2d Cir. 2006).

## III. DISCUSSION

Defendants seek judgment on both claims against them. The Court will address each in turn.

### A. Excessive Force

Excessive force claims brought pursuant to the Fourth Amendment "'are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard.'" Shamir v. City of New York, 804 F.3d 553, 556 (2d Cir. 2015) (quoting Graham v. Connor, 490 U.S. 386, 388 (1989)). Using "excessive force renders a seizure of the person unreasonable and for that reason violates the Fourth Amendment." Id. To decide whether the force was reasonable, a court should pay "'careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the subject poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" Soares v. Connecticut, 8 F.3d 917, 921 (2d Cir. 1993) (quoting Graham, 490 U.S. at 396). This standard focuses on "'a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" Brown v. City of New

9

York, 798 F.3d 94, 100 (2d Cir. 2015) (quoting Graham, 490 U.S. at 397). "A court's role in considering excessive force claims is to determine whether a jury, instructed as to the relevant factors, could reasonably find that the force used was excessive." Id. at 103.

      The facts, related above, demonstrate that an issue of fact exists for a jury as to whether Officers Craw and Hart used excessive force in detaining Plaintiff. The parties dispute whether Plaintiff stopped and surrendered with his hands behind his head, or whether he fled, tripped and fell, and then prevented the officers from grabbing his arms. They dispute whether he tried to crawl away after he fell, and whether he kicked at the officers when they tried to take him into custody. They also dispute the need for, and the severity of the blows administered by the officers with their knees to Plaintiff's side. A reasonable juror could certainly decide that Plaintiff, by fleeing in a vehicle and endangering the public, attempting to escape on foot, and then lashing out at the officers, required officers to use a substantial amount of force to subdue him. At the same time, a reasonable juror could also accept Plaintiff's testimony and conclude that the Officers had subdued Plaintiff and had him in custody when they struck him with their knees. Such conduct, that reasonable juror could decide, was not reasonable under the circumstances and constituted excessive force. The Court would deny the motion on that basis.

      Defendants offer another reason to grant summary judgment, however: they argue that Plaintiff cannot prevail on his excessive force claim because a jury convicted him of resisting arrest. They point to Heck v. Humphrey, 512 U.S. 477 (1994), which provides that "to recover damages for . . . harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared

invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" Heck, 512 U.S. at 487. Defendants argue that Plaintiff's conviction for resisting arrests bars his Section 1983 excessive force claim.[2]

The Second Circuit Court of Appeals has concluded that "the jury's return of a guilty verdict in state court for resisting arrest . . . does not necessarily preclude a subsequent claim of excessive force in federal court." Sullivan v. Gagnier, 225 F.3d 161, 165 (2d Cir. 2000). As a general matter, "[t]he fact that a person whom a police officer attempts to arrest resists, threatens, or assaults the officer no doubt justifies the officer's use of some degree of force, but it does not give the officer license to use force without limit." Id. at 165-66. As such, "[a] claim of excessive force would not be precluded by the plaintiff's prior [conviction] for resisting arrest . . . unless facts actually determined in his criminal conviction that were necessary to the judgment of conviction are incompatible with the claim of excessive force being raised in the subsequent civil suit." Id. at 166. To determine whether an incompatibility between the state-court conviction and the excessive force claim exists, "a federal court must apply the rules of collateral estoppel of the state in which the prior judgment was rendered, which in this case is New York." Id. In New York,

---

[2]Plaintiff appealed his conviction. The Appellate Division dismissed that appeal. See People v. Hicks, 172 A.D.3d 1938 (4th Dept. 2019). The Court did not address his conviction for resisting arrest. The Court did find, however, that the evidence supported Plaintiff's conviction for reckless endangerment in the second degree. Id. at 1939-1940. The Court found that "the weight of the evidence supports the jury's conclusion that defendant recklessly engaged in conduct that created a substantial risk of serious physical injury inasmuch as he led police on a high-speed chase through a residential neighborhood and, in so doing, traveled at more than twice the speed limit on the wrong side of the street, ignored stop signs, and almost struck two moving vehicles and two parked cars." Id.

11

such preclusion "depends on the specific facts and circumstances of each case." Id. Collateral estoppel "applies 'if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action.'" Id. (qutoing Parker v. Blauvelt Volunteer Fire Co., 93 N.Y.2d 343 (N.Y. 1990)).  The Court must undertake "a detailed examination of the record in the prior state criminal case, including the pleadings, the evidence submitted and the jury instructions, in order to determine what issues were actually litigated and necessary to support a final judgment on the merits." Id.  The party seeking preclusion (here the Defendants) has "[t]he burden of proof with respect to whether an issue is identical to one that was raised and necessarily decided in the prior action[.]" Id.

"Under New York law, an individual commits the offense of resisting arrest when he 'intentionally prevents or attempts to prevent a police officer or peace officer from effecting an authorized arrest of himself or another person.'" Tracy v. Freshwater, 623 F.3d 90, 100 (2d Cir. 2010) (quoting N.Y. Penal Law § 205.30).  Conviction under that statute requires a showing "that (1) the defendant intentionally engaged in some conduct by which he either prevented or attempted to prevent arrest, and (2) the arrest was lawful in that it was supported by either a warrant or probable cause." Id.  Courts have concluded that "'[it] is not necessary that a defendant use 'force or violence' in obstructing the officer.  It is enough that he engage in some conduct with the intent of preventing the officer from effecting an authorized arrest of himself or another person.'" People v. Stevenson, 31 N.Y.2d 108, 112 (1972)(quoting Practice Commentary by Denzer and McQuillan, McKinney's Cons. Laws of N.Y., Book 39, Penal Law § 205.30, p. 677).

12

Defendants' papers include the trial transcript from Plaintiff's State criminal trial. See dkt. #s 48-7-48-9. The Court's review of that transcript indicates that Plaintiff's narrative concerning the events of his arrest remained fairly consistent from the trial–where he decided during the middle of the trial to represent himself *pro se*–to his deposition in this matter. Plaintiff has consistently maintained that he attempted to surrender to the Defendants by dropping to his knees and interlacing his hands behind his head, that the only resistance he offered to the beating he claims he endured came in an effort to protect himself, and that the officers struck him without justification. The parties agree that at the trial Plaintiff claimed that "he initially ran from police after ditching his vehicle, but that he voluntarily got down on his knees and put his hands behind his head" at the location in question. Defendants' Statement at ¶ 63. The parties also agree that Plaintiff claimed he was not resisting arrest when officers started beating him, both at his trial and during his deposition for this case. Id. at ¶¶ 64-65. The parties also agree that at his trial Plaintiff claimed in his closing argument "that he did not have any drugs on him when he was pulled over and did not resist arrest after he ran from police on foot." Id. at ¶ 71. He claimed police planted drugs on him to cover up their "beating" of him. Id. at ¶ 72. He also argued that he had not resisted arrest; he surrendered to police, who then started beating him. Id. at ¶ 75. He argued that any conduct that occurred after his surrender was an effort to protect himself from police abuse. Id. at ¶ 76. He insisted that "that's why they said I was resisting arrest, because you can use force if you say I'm resisting arrest." Id. at ¶ 77.

In arguing Plaintiff's guilt on the resisting arrest charge during his criminal trial, the State argued that:

13

> After being ordered two times to show his hands, the defendant takes off from the vehicle and traffic stop with Officer Craw and Officer Hart next to his vehicle. Just remember, resisting arrest, he resists arrest from the original vehicle and traffic stop throughout the car chase and from the front yard of 809 1st North Street. This is all continuous.
>
> Next, he leads the police on a high-speed chase through the City of Syracuse. They're following with lights and sirens. He never stops. He bails from his moving vehicle and police vehicle still in pursuit, runs on foot. Police are chasing the defendant. Officer Craw is yelling to him to get on the ground and stop. He continues running. The defendant then trips, places his hands under his head and under his torso. The defendant is continually ordered to stop resisting arrest and give the police his hands. He kicks and flails his legs; he continues to fight with the police and he resists lawful arrest. The defendant continues not to comply with the arrest despite knee strikes to his torso, and then both arms have to be forced behind his back to finally place him in handcuffs, under control and under arrest.
>
> The People have proven through all the evidence, physical and testimony in this case, that the defendant is guilty of resisting arrest.

Trial Transcript, Exh. J to Defendant's Motion, dkt. # 48-9, at 490-491.

The trial court in Plaintiff's criminal case then instructed the jury on resisting arrest as follows:

> Under our law, a person is guilty of resisting arrest when he or she intentionally prevents or attempts to prevent a police officer from effecting an authorized arrest of himself or herself. "Intent" means conscious objective or purpose. Thus, a person intentionally prevents or attempts to prevent a police officer from effecting an authorized arrest of himself or herself when it is that person's conscious object or purpose to do so.
>
> What is an authorized arrest? An arrest is authorized when a police officer making the arrest has reasonable cause to believe that the person being arrested has committed a crime. Reasonable cause does not require proof that the crime was in fact committed. Reasonable cause exists when a police officer has knowledge of facts and circumstances sufficient to support a reasonable belief that a person has been or is being–that a crime has been or is being committed.
>
> Now, in this regard, I instruct you that reckless driving, which is a Vehicle and Traffic Law offense, is a crime, and I instruct you that unlawfully fleeing a police officer in the third degree is a crime.
>
> I further instruct you with respect to use of force, in effecting an arrest under Penal

14

>Law Section 35.30, a police officer in the course of effecting or attempting to effect an arrest of a person whom he reasonably believes to have committed an offense may use non-deadly physical force when and to the extent he or she believes reasonably necessary to effect such arrest.
>
>Before you may find the defendant guilty of resisting arrest, the People must prove to your satisfaction beyond a reasonable doubt two elements: First, that on or about May 15th, 2014, in the County of Onandaga, Veline Hicks prevented or attempted to prevent a police officer from effecting an authorized arrest of himself and second, that he did so intentionally.
>
>If the People prove both elements to your satisfaction beyond a reasonable doubt, you must find the defendant guilty of resisting arrest. If the People fail to prove either one or two of those elements beyond a reasonable doubt, you must find the defendant not guilty of resisting arrest.

Id., at 504-505.

Having examined in detail the record provided by the Defendants from Plaintiff's criminal trial, the Court will reject the Defendants' argument in this respect. While the Court recognizes that there was argument at trial about the need for force used by the officers in their arrest, the Court finds that Plaintiff's state-court conviction did not require the jury to conclude beyond a reasonable doubt that the officers did not use excessive force. In that case, the jury had evidence that the Plaintiff fled officers after their initial stop, drove recklessly (a crime for which he was convicted), jumped out of his car, and then fled the police (a crime for which he was convicted). The judge instructed the jury that officers were authorized to arrest Plaintiff for reckless driving or fleeing police. The judge also instructed the jurors that they could find Plaintiff guilty if they found he intentionally attempted to evade arrest. When the jurors found Plaintiff liable for reckless driving, his subsequent flight constituted resisting arrest. The judge also did not instruct jurors that they had to find the Plaintiff not guilty if they concluded that officers used more force than necessary to affect the arrest. While Defendant may have argued that he did

not commit the drug crimes for which he had been charged and that officers planted the drugs on him to cover for their excessive force, jurors could have accepted that argument and still found that Plaintiff's flight from officers amounted to resisting arrest before he ever fell to his knees and had a physical altercation with officers while they attempted to cuff him.  The facts of the final moments of Plaintiff's arrest were not necessary for jurors to find him guilty of resisting arrest, and Plaintiff is not estopped from claiming false arrest under those circumstances.  See Sullivan, 225 F.3d at 166 ("A claim of excessive force would not be precluded by the plaintiff's prior [conviction] for resisting arrest . . . unless facts actually determined in his criminal conviction that were necessary to the judgment of conviction are incompatible with the claim of excessive force being raised in the subsequent civil suit.").

### B.     Failure to Intervene

Defendants also seek dismissal of Plaintiff's failure-to-intervene claim.  "A police officer is under a duty to intercede and prevent fellow officers from subjecting a citizen to excessive force, and may be held liable for his failure to do so if he observes the use of force and has sufficient time to act to prevent it." Figueroa v. Mazza, 825 F.3d 89, 106 (2d Cir. 2016).  Liability attaches on the theory that the officer, by failing to intervene, becomes a 'tacit collaborator' in the illegality." Id. (quoting O'Neill v. Krzeminski, 839 F.2d 9, 11-12 (2d Cir. 1988)).  "An officer who fails to intercede in the use of excessive force . . . is liable for the preventable harm caused by the actions of other officers." Terebessi v. Torreso, 764 F.3d 217, 243 (2d Cir. 2014).  "Whether the officer had a 'realistic opportunity' to intervene is normally a question for the jury, unless, 'considering all the evidence, reasonable jury could not possibly conclude otherwise.'" Id. at 244 (quoting Anderson v.

16

Banen, 17 F.3d 552, 557 (2d Cir. 1994)).  An underlying constitutional violation is a precondition of a failure-to-intervene claim.  See O'Neill, 839 F.2d 9, 11 (2d Cir. 1988) ("A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers.").

Defendants contend that no excessive force claim can lie against either officer, and that the derivative failure-to-intervene claim must also fail.  Even if Plaintiff could maintain his excessive force claim, they argue, no evidence could support a claim for failing to intervene against either officer.  They contend that Plaintiff's theory of liability implicates both officers in the use of excessive force when they allegedly kneed him as he lay on the ground.  Under circumstances where both officers are potentially liable for using excessive force, neither can be liable for failing to prevent the use of such force.  Plaintiff agrees that "[w]here there is a direct claim for a constitutional violation against an officer, the derivative failure to intervene claim is usually held to be waived."  At the same time, he points out, where a jury finds that one officer did not use excessive force and another officer did use such force, the jury may consider whether the first officer failed to intervene.  "Plaintiff does not ask for a finding on both claims against any one Defendant."

The Court will deny the motion in this respect as well.  While the Court agrees that an officer who uses excessive force cannot be simultaneously liable for failing to intervene, Plaintiff's deposition testimony indicates that he believed the officers played different roles in the alleged excessive force. Asked whether Officer Craw was more "aggressive" than Officer Hart in the altercation, Plaintiff answered that "Officer Craw did [it] longer.  Like, I don't know."  Plaintiff's Deposition, dkt. # 48-13, at 142.   Plaintiff also testified at his deposition that he had experienced past conflict with Officer Craw,

17

recognized him at some point in the sequence of events, and suspected Craw had some sort of animus towards him, and "wanted to get [him]." Id. at 97. He testified that he was fearful of Officer Craw under certain circumstances. Id. at 74. In addition, as described above, Officer Craw led the chase of Plaintiff and fired his Taser at him. A reasonable jury could conceivably conclude that Craw led the activity and Hart followed along, applying reasonable force after he permitted Craw to engage in excessive force. In any case, the facts about each Defendants' role in the arrest are in dispute.

Under those circumstances, the Court will deny the motion to dismiss and wait to see how the evidence comes in at trial. The motion will be denied with leave to renew at an appropriate time during trial.

### C. Qualified Immunity

In the alternative, Defendants argue they are entitled to qualified immunity. "Qualified immunity is an affirmative defense that shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Stephenson v. Doe, 332 F.3d 68, 76 (2d Cir. 2003) (quoting McCardle v. Haddad, 131 F.3d 43, 50 (2d Cir. 1997)). Qualified immunity also applies when "'it was 'objectively reasonable' for [the officer] to believe that [his or her] actions were lawful at the time of the challenged act.'" Betts v. Shearman, 751 F.3d 78, 83 (2d Cir. 2014) (quoting Jenkins v. City of New York, 478 F.3d 76, 87 (2d Cir. 2007)). The Court looks to whether a right was "clearly established" and thus "whether it would be clear to a reasonable officer [in the position of the defendant] that his conduct was unlawful in the situation he confronted.'" Southerland v. City of New York, 652 F.3d 209, 233 (2d Cir. 2011) (quoting Saucier v. Katz, 533 U.S.

194, 202 (2001)).  In considering that issue, a court examines "'(1) whether the right was defined with reasonable specificity; (2) whether Supreme Court or other court of appeals case law supports the existence of the right in question, and (3) whether under preexisting law a reasonable defendant would have understood that his or her acts were unlawful.'" Id. (quoting Scott v. Fischer, 616 F.3d 100, 105 (2d Cir. 2010)).  While "the matter of whether a right at issue is clearly established is a question of law, that question is 'tied to the specific facts and context of the case.'" Id. (quoting Giles v. Repicky, 511 F.3d 239, 244 (2d Cir. 2007)).

Defendants contend that Plaintiff is estopped from arguing that the officers used excessive force by virtue of his resisting arrest conviction, and therefore he cannot "[assert] factual allegations or legal arguments that have been litigated and decided against him in his criminal trial."  Defendants argue that the Court should not consider Plaintiff's claims that officers used more force than necessary to arrest him.  As explained above, the Court has rejected this position, and will consider the Plaintiff's claims.

Defendants also argue that the question for qualified immunity is "whether it was clearly established, on May 15, 2014, that a police officer could not lawfully use physical force in a situation where an individual ran from police, disregarding commands to stop, then secreted his hands after going down to the ground causing an officer to increase his suspicion that Plaintiff was attempting to access a weapon and otherwise resisted lawful arrest."  Defendants insist that no clearly established authority establishes that force could not be used under those circumstances.  Of course, the issue in this case is not whether Defendants could use some force to arrest Plaintiff after he fled them, but whether the force they used was unreasonable under the circumstances.  The Court agrees that no

19

law prohibits the use of force under those circumstances, but the Court also finds that the prohibition on using *excessive* force, even when a Defendant flees, is clearly established in the relevant case law.  The cases cited above demonstrate the longstanding nature of that prohibition.  At this point in the litigation, and considering the evidence in the light most favorable to the non-moving party, a question of fact exists as to whether the force used was excessive.  If, as he claims, Plaintiff surrendered and placed his hands on top of his head and Defendants in response grabbed his arms and struck him repeatedly in the side with their knees, no reasonable officer under the circumstances would believe that his actions were lawful.  Qualified immunity does not apply under these circumstances.  In this respect, the motion will be denied with leave to renew at the close of the Plaintiff's case at trial.

## IV.   CONCLUSION

For the reasons stated above, the Court will DENY the Defendants' motion for summary judgment, dkt. # 48.  The Clerk of Court shall schedule trial in this matter.

**IT IS SO ORDERED.**

Dated:September 27, 2019

*Thomas J. McAvoy*
Thomas J. McAvoy
Senior, U.S. District Judge