**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**VELINE HICKS,**

                                        **Plaintiff,**

        **v.**                                                 **5:17-CV-475**
                                                               **(TJM/ATB)**

**POLICE OFFICER DAVID CRAW, and**
**POLICE OFFICER DAVID HART,**

                                **Defendants.**
_____

**Thomas J. McAvoy,**
**Sr. U.S. District Judge**


### DECISION & ORDER

        Before the Court are the parties motions in limines in this matter.  <u>See</u> dkt. #s 83,

89, 119.  The parties have briefed the issues.

**I.        BACKGROUND**

        This case concerns events that occurred on May 15, 2014 in the City of Syracuse,

New York.  Plaintiff alleges that on that date, at approximately 12:50 a.m., Defendants

Craw and Hart, Officers in the Syracuse Police Department, used excessive force when

they arrested him.  The arrest occurred after Plaintiff fled from the officers after they

attempted to stop his vehicle.  The Defendants eventually engaged in a foot chase of the

Plaintiff and struggled with him when they caught him.  The question for the jury will be

whether Defendants used excessive force or failed to intervene to prevent the use of

excessive force during this struggle.

1

II.     **ANALYSIS**

Each side filed motions in limine in anticipation of trial.  The Court will address the

motions in turn.

A.     **Defendants' Motions**

The Court will address each motion in turn.

i.  **Plaintiff's Criminal Conditions Arising from the Incident in Question**

Defendants first argue that the Court should permit introduction of the Plaintiff's

criminal convictions that arose from the underlying incident.  After a trial, a jury found the

Plaintiff guilty of: criminal possession of a controlled substance in the third degree; criminal

possession of a controlled substance in the fourth degree; unlawful fleeing of a police

officer in a motor vehicle in the third degree–an A Misdemeanor; reckless endangerment

in the second degree–an A Misdemeanor, resisting arrest–an A Misdemeanor; and

unlawful possession of marijuana–a Violation.  Defendants contend that these convictions

are admissible "because they either (a) [are] felonies; [(b)] conclusively establish factual

issues that are relevant to the claims being tried; or (c) conclusively establish facts that

have been denied as part of Plaintiff's theory of the case and are thus admissible as to

credibility."

Defendants first argue that the Plaintiff's convictions for criminal possession of a

controlled substance are admissible pursuant to Federal Rule of Evidence 609, since they

are felonies.  Federal Rule of Evidence 609(a)(1)(A) provides that, for impeachment

purposes in a civil case, a felony conviction "must be admitted, subject to Rule 403[.]"

FED. R. EVID. 609(a)(1)(A).  Federal Rule of Evidence 403 permits a court to "exclude

2

relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. Under Rule 609(a)(1)(A), then, "the court must admit 'the name of the conviction, its date, and the sentence imposed unless the district court determines that the probative value of that evidence 'is substantially outweighed'" by its prejudicial effect. Morris v. Seward, No. 16cv601, 2021 U.S. Dist. LEXIS 228937, at *10 (N.D.N.Y. Nov. 30, 2021) (quoting FED. R. EVID. 403).

Plaintiff responds that his felony convictions are presumptively admissible for impeachment under Rule 609, but contends that they should only be used against him if he testifies that he has never been convicted of a crime. He makes no argument about whether the evidence would be unduly prejudicial. As the Rule stated above demonstrates, these felonies are admissible for impeachment purposes unless Plaintiff can show undue prejudice from them. He cannot. The felonies in question stemmed from the chase that led to his arrest and the alleged use of excessive force. Information about the nature of the convictions is not unduly prejudicial; they help explain the incident in question. The Court will grant the motion in this respect.

Defendants argue that the misdemeanor convictions are admissible, not for impeachment purposes, but because "the resisting arrest and unlawful fleeing a police officer' misdemeanor convictions are directly relevant to Plaintiff's § 1983 excessive force claim." Defendants argue that, the fact that a jury concluded that Plaintiff resisted arrest is material to the question of whether Defendants used excessive force. "A prior judgment of conviction may be used as prima facie evidence in a subsequent civil suit only with respect

3

to matters of fact or law 'necessarily decided by the conviction and the verdict on which it was based.'"  New York v. Hendrickson Bros., Inc., 840 F.2d 1065, 1081 (2d Cir. 1988). Defendants argue that the Plaintiff's conviction for resisting arrest is relevant to the question that the jury must decide–whether the force used by officers in effecting that arrest was excessive.  In addition, Defendants point out, Plaintiff's position in this case is that he did not resist arrest.  A conviction for resisting arrest could impeach him should he make that claim at trial.

The Court agrees that the Plaintiff's conviction for resisting arrest is relevant to whether the Defendants used excessive force.  Excessive force claims brought pursuant to the Fourth Amendment "'are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard.'"  Shamir v. City of New York, 804 F.3d 553, 556 (2d Cir. 2015) (quoting Graham v. Connor, 490 U.S. 386, 388 (1989)).  Using "excessive force renders a seizure of the person unreasonable and for that reason violates the Fourth Amendment."  Id.  To decide whether the force was reasonable, a court should pay "'careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the subject poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'"  Soares v. Connecticut, 8 F.3d 917, 921 (2d Cir. 1993) (quoting Graham, 490 U.S. at 396).  Thus, while a conviction for resisting arrest is not dispositive of whether Defendants used excessive force, the fact of a conviction is still relevant to the amount of force reasonably necessary for the Defendants to achieve their objective in arresting the Defendant.

The law thus establishes that an arrestee's resistance can be considered in

4

determining whether the force used was reasonable.  A jury's finding that Plaintiff resisted arrest is thus relevant to the circumstances the jury must consider in determining liability for excessive force.  While the evidence is relevant[1], the Court must still consider Rule 403 to determine whether the evidence should be admissible.  That Rule applies to all relevant evidence.  Defendants here seek to introduce the fact of the conviction to the jury; and the jury could take that conviction as *prima facie* evidence that Plaintiff resisted arrest.  See Hendrickson Bros., Inc., 840 F.2d at 1081 (evidence of a prior conviction was "'some evidence,' that the convicted defendants had participated in [the] schemes" that were the subject of the civil case).  The Court finds that the prejudicial effect of introducing evidence of the actual conviction for resisting arrest outweighs the probative value of the conviction. The Defendants will testify about how Plaintiff fled a traffic stop, first in a vehicle, and then on foot, and then engaged in a physical confrontation with the officers who finally took him into custody.  Plaintiff will offer his version of events.  The jury will then have to decide which version to believe, and whether Plaintiff's conduct helped to justify the force that Defendants used.  Informing the jury of a conviction for resisting arrest will not aid that evaluation of the evidence in a way that outweighs the potential for the fact of the conviction to confuse the issues.  Since the jury can find for the Plaintiff even though he resisted arrest, the fact of his misdemeanor conviction is unduly prejudicial.  The Court will

---

[1]The Court is not convinced that Rule 609 applies in this situation.  The conviction was not a felony, and thus 609(a)(1)(A) does not apply.  Instead, 609(a)(2) would appear the relevant Rule.  Under that Rule, "for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements fo the crime required proving–or the witness's admitting–a dishonest act or statement."  FED. R. EVID. 609(a)(2).  Resisting arrest is not that sort of crime, and the Rule would not appear to apply.

deny Defendants' motion in this respect.  The same rule applies to Plaintiff's other non-felony convictions

Defendants may of course impeach Plaintiff with any of his convictions if he denies that a jury found him guilty of them.

### ii.    Factual or Legal Arguments Related to Defendants' Convictions

Defendants argue that Plaintiff should be precluded from making factual or legal arguments that undermine his convictions.   They argue that the fact of the convictions means he is collaterally estopped from making any arguments that would undermine his convictions.  While admitting that some facts related to the convictions are admissible at trial, they argue that "preclusive effect must be given to those matters of fact or law that were necessarily decided by criminal verdict."  Defendants suggest that Plaintiff should be precluded from:

> contending that on May 15, 2014, he did not factually act in accord with the legal established standards for his convictions in that he:
>
>> knowingly and unlawfully possessed a narcotic drug (cocaine) with intent to sell it;
>> knowingly and unlawfully possessed one or more preparations, compounds, mixtures or substances containing a narcotic drug (cocaine), and said preparations, compounds, mixtures or substances were of an aggregate weight of one-eighth ounce or more;
>> knowing that he had been directed to stop his motor vehicle by a uniformed police officer or a marked police vehicle by the activation of either its lights or lights and siren of such vehicle, thereafter attempted to flee such officer or vehicle by driving at speeds 25 m.p.h. or more above the speed limit or by driving recklessly;
>> recklessly engaged in conduct which created a substantial risk of serious physical injury to Police Officer Craw;
>> intentionally prevented or attempt to prevent Police Officer David Craw from effecting an authorized arrest of himself; and
>> knowingly and unlawfully possessed marijuana.

Defendants further argue that Plaintiff should not be permitted to argue that he was

unaware that police attempted to stop him on the night in question, since he had made that argument at trial and the jury rejected it.  They also point out that Plaintiff testified at trial that he was "merely laying with my hands on the ground" and was not resisting officers' attempts to arrest him and that he resisted attempts to cuff him because he was attempting to protect himself.

> Defendants argue:
>
> Thus, while Plaintiff claimed at various times that he was either not resisting, or perhaps was merely reacting unintentionally, taking that position at trial ould [sic] necessarily undermine his conviction for resisting arrest, which found that he *intentionally* prevented officers from effecting his authorized arrest.
> Plaintiff had a full and fair opportunity to litigate the foregoing issues in the criminal proceeding.  He is now collaterally estopped from asserting that he did not factually act in accord with the legally established standard for the numerous convictions that resulted from his behavior on May 15, 2014.

Plaintiff responds with a focus on his conviction for resisting arrest.  He reiterates that he could simultaneously be guilty of resisting arrest and the victim of excessive force, and that collateral estoppel therefore does not apply.  With reference to his other convictions, he argues "Defendants have a remedy if Plaintiff alleges he did not possess drugs; his conviction for drug related charges can be used against him for impeachment purposes pursuant to F.R.E. 609."

The Court agrees that Plaintiff is estopped from attempting to introduce evidence or argument that he did not possess drugs, that he did not knowingly flee police officers who tried to stop him, either in his car or on foot.  Argument or evidence to that effect would be improper and inadmissible.  The Court will grant the motion in this respect.

As to the issue of resisting arrest, the jury in this matter must decide whether excessive force occurred in the arrest of the Plaintiff, and whether a failure-to-intervene in

7

the face of that arrest occurred.  Relevant to that issue are the events that led to the arrest, including the stop of Plaintiff's vehicle, his flight from that stop, and the officers' response to that flight.  The jury will need to understand the events that led to the Plaintiff's arrest, including the stop and Plaintiff's flight, in order to determine whether the Defendants' use of force was reasonable under the circumstances.

Defendants particularly focus on a desire to prevent Plaintiff from testifying that he did not resist arrest.  The Court agrees that Plaintiff cannot credibly testify that he never resisted arrest.  Defendants' argument here appears to be that Plaintiffs' conviction for resisting arrest should preclude him from arguing that Defendants used excessive force in arresting him.  The Court addressed that issue on summary judgment, and at some level Defendants here attempt to seek reconsideration of the Court's decision to deny their motion for summary judgment.  The Court has already explained that Plaintiff could both resist arrest and be a victim of excessive force, since the question for excessive force is whether officers used reasonable force under the circumstances.  Finding that the Defendants here used excessive force would not require jurors to conclude that Plaintiff did not resist arrest.  To the extent that Defendants' motion seeks to prevent Plaintiff from testifying about the circumstances of the officers taking him into custody, particularly the circumstances surrounding the physical struggle where the alleged excessive force occurred, such testimony is relevant and admissible.

In the end, the Court concludes that the admissibility of particular evidence and argument on these issues depends on how the parties attempt to introduce such evidence and argument at trial.  The Court will therefore reserve on the issues and rule on appropriate objections at trial.

8

### iii.    Citizen Review Board Reports

Defendants seek to preclude admission of reports of the Syracuse Citizen Review Board, which found Defendants culpable for use of excessive force.  Plaintiff sought to introduce those reports and the documents related to them at his criminal trial, but the presiding judge refused to permit introduction of the evidence.  The Defendants did not testify before the Board, and the opinions came without considering their testimony. Defendants contend that the documents contain hearsay, offer lay opinion testimony, are not relevant, are unduly prejudicial, and are impermissible evidence of subsequent remedial measures.

Plaintiff responds that he does not intend to offer the CRB reports into evidence, but that he reserves his right to use those documents to refresh recollections or for impeachment purposes on cross-examination, as appropriate.

The Court will grant the motion in this respect. Even assuming the evidence is relevant, the Court finds that admitting such evidence would be unduly prejudicial and likely to confuse the issues for the jury.  The reports in question do not contain testimony from the officers involved and offer a legal conclusion that is the province of the jury in this case.   Plaintiff may not attempt to introduce the CRB reports in his case-in-chief.  The Court will reserve on any attempts to introduce the reports for impeachment purposes.[2]

_____

[2]The Defendants have pointed to the Court to a recent Second-Circuit opinion that casts doubt on the general admissibility of a CRB report.  See Grant v. Lockett, 2021 WL 5816245, at *2, *2 n.3 (2d Cir. Dec. 8, 2021) (summary order).  That case found that the trial court improperly admitted records from the CRB pursuant to the hearsay exception for business records in Federal Rule of Evidence 803(6).  Such records, the Court of Appeals concluded, were not "'made at or near the time by–or from information transmitted by–someone with knowledge.'" 2021 WL 5816245 at *2 (quoting FED. R. EVID. 803(6)(A)). The records also did not concern a "'regularly conducted activity' contemplated by the

### iv.    Personnel Files and Other Documents

Defendants seek to preclude Plaintiff from introducing their personnel files, as well as eliciting testimony regarding other lawsuits, civilian complaints, internal affairs reports, notices or claim, disciplinary history, or CRB findings.  Such information, they claim, is not relevant to the issues in this case and is not admissible under Rule 404(b).

Plaintiff responds that he "reserves his right to use such documents to refresh recollection and/or for impeachment purposes where appropriate."  He also argues that the personnel files "should not be precluded by Rule 404(b) if the materials are relevant to issues other than propensity, such as lack of mistake."  He does not offer any argument about how particular evidence would fit that exception.

Federal Rule of Evidence 404(b)(1) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order show that on a particular occasion that person acted in accordance with that character."  FED. R. EVID. 404(b)(1).  Such evidence, however, "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  FED. R. EVID. 404(b)(2).

The Court will reserve on the motion.  The Defendants' motion seeks to preclude Plaintiff from "introducing any personnel files or evidence of prior lawsuits, notices of claim, internal affaris reports, disciplinary histories, and any CRB findings into evidence or

_____

business records exception."  Id.  The records would not have been admissible as a "record or statement of a public office" pursuant to Rule 803(8), the court found.  The Court will also defer in ruling on this barrier to the admissibility of such records.  Plaintiff will have to overcome any objection to their admission by some means other than Rule 803(6) or 803(a), however.

10

eliciting testimony related to the same." The Court agrees with the Defendants that such evidence could not be introduced in the case in chief to prove Defendants "character in order show than on a particular occasion the person acted in accordance with that character," the Defendants have not pointed to any particular documents that Plaintiff intends to introduce for that purpose. While Plaintiff seeks leave to introduce such documents for other purposes, he has not pointed to any such documents or articulated a particular purpose for introducing them. The Court will address such documents if they appear at trial.

**v.**      **Previous Interactions with Defendants**

Defendants next seek to preclude Plaintiff from introducing "any testimony or documentary evidence regarding any allegedly derogatory or negative interactions that he previously had with either of the" defendants. Defendants claim that Plaintiff has alleged that he had previous interactions with Officer Craw that resulted in an arrest. They contend that past arrests are not relevant to the incident here in question, and that Plaintiff did not allege in his Complaint that Craw's previous interactions with Plaintiff motivated his alleged excessive force on May 15, 2014. To the extent that Plaintiff seeks to argue that his previous interactions with Officer Craw caused him to flee, Defendants contend, he should be precluded from making that argument because he was found guilty of fleeing a police officer. Moreover, Defendants claim, any previous use of excessive force would "have no probative valuer as to whether previous uses of force would be a causal factor in the subsequent use of force on May 15, 2014." Permitting Plaintiff to testify about past experiences with Officer Craw would be a way to admit inadmissible character evidence about Craw. Defendants also add that permitting Plaintiff to testify about his past

interactions with Craw would allow them to introduce evidence of Plaintiff's previous arrests by Craw.  Plaintiff contends that his prior experience with Craw is relevant to his conduct on the day in question.

The Court will deny the motion in this respect.  Plaintiff's previous experience with Craw is relevant to his actions on May 15, 2014.  The jury must decide what happened between the parties on the day in question, and it is undisputed that Plaintiff fled the Defendants.  His motivation for fleeing is relevant to the events that occurred, and a history of past conflict with Craw could help explain the situation on May 14, 2015.  Such testimony would of course expose the Plaintiff to cross examination about the nature of his earlier interactions with Craw, which could include information about previous arrests.

### vi.    Medical Records and Lay Opinion

Defendants argue that Plaintiff has not identified any treating physicians, medical professionals, or health professionals as witnesses, or disclosed any experts in this case. Plaintiff intends, Defendants claim, to introduce evidence of medical diagnosis and causation through the medical records themselves.  Introducing evidence in that way is not permitted, they claim.  A diagnosis can only be offered by an expert.  Defendants also seek to preclude testimony from Sara McAlister, who is listed as a witness by the Defendant on these issues.  Plaintiff did not identify this witness during discovery. Defendants argue that Plaintiff should not be permitted to introduce "naked" medical records, and should not be permitted to testify as to any diagnoses he received.  Instead, he should be permitted only to testify as to his symptoms.  Plaintiff does not address whether McAlister should be permitted to testify.  He argues, however, that he should be permitted to testify as to his medical condition, and that the records he intends to submit

12

are "self-authenticating" and do not require any expert testimony.

The Court agrees that Plaintiff should be precluded from testifying as to any medical diagnosis.  He may testify to his symptoms and to any injuries he felt, when he felt them, and where on his body they were, but he cannot offer any testimony on a diagnosis or the prognosis for recovery from such injuries.   Plaintiff also may not testify about any specific medical diagnosis that would require expert medical understanding or diagnostic equipment to establish.  Courts have found that in Section 1983 cases, "'expert medical opinion evidence is usually required to show the cause of an injury or disease because the medical effect on the human system of the infliction of injuries is generally not within the sphere of the common knowledge of the lay person." Barnes v. Anderson, 202 F.3d 150, 159 (2d Cir. 1999) (quoting Shegog v. Zabrecky, 36 Conn.App. 737, 654 A.2d 771, 776 (Conn. App. Ct. 1995);  see also, Fane v. Zimmer, Inc., 927 F.2d 124, 131 (2d Cir. 1991) (applying New York law to reach similar conclusion about the need for expert testimony); Vogelfang v. Riverhead County Jail, No. 04cv1727, 2012 U.S. Dist. LEXIS 58064, at *22 (April 19, 2012) ("plaintiff was not permitted to testify as a layperson regarding the diagnosis and prognosis of her injuries, issues on which she was not competent to testify.").

Plaintiff can also testify to any pain and suffering he experienced from Defendants' conduct, and he may connect that pain and suffering to the Defendants' conduct.  The jury may draw the conclusion that Defendants' conduct caused Plaintiff's pain and suffering from Plaintiff's testimony about Defendants' conduct and the nature of his injuries.  See Fane, 927 F.2d at 131 ("where matters are within the experience and observation of the ordinary jurymen from which they may draw their own conclusions and the facts are of

such a nature as to require no special knowledge or skill, the opinions of experts are unnecessary."). The jury does not need expert testimony to conclude that a defendant kicking a plaintiff in the ribs caused the rib pain the plaintiff suffered. This is a case "'where the causal relationship between the defendant's act and the injury suffered by the plaintiff is within the knowledge, experience, and observation of a layperson, [and] expert testimony is not required'" to establish causation for the injuries to which Plaintiff is permitted to testify. Duchnowski v. Cty. of Nassau, 416 F.Supp.3d 179, 181 (E.D.N.Y. 2018) (quoting Jimenez v. Supermarket Serv. Corp., No. 01-CV-3273, 2002 U.S. Dist. LEXIS 7029, 2002 WL 662135, at *4 (S.D.N.Y. Apr. 22, 2022)).

       As to the introduction of medical records, the Court will reserve on the question of whether Plaintiff can satisfy the general evidentiary requirements for the introduction of such records until the time of trial. Plaintiff should be prepared to satisfy the Federal Rules of Evidence or procure a stipulation from the Defendants before attempting to introduce such records. Defendants object that the records should not be admitted because they contain diagnoses that require an explanation from an expert to understand. Courts have determined that medical records that contain diagnoses which require "specialized skill and knowledge" to interpret should not be admitted without an expert to explain them. Duchnowski v. City of Nassau, 416 F.Supp.3d 179, 183 (E.D.N.Y. 2018). At the same time, a court may permit the introduction of "medical records which relate only to the alleged injuries [and] do not require specialized knowledge or skill to understand" without such expert testimony. Id. The Court has not seen the records and cannot know whether they could be admitted in this case. The Court will therefore reserve ruling on the admissibility of the medical records until an appropriate time at trial. The Court would

encourage the parties to confer and reach a suitable stipulation about the admissibility of any medical records.  The Court is not inclined to admit medical records that contain any specialized diagnosis that would be unfamiliar to an ordinary layperson.  The Court would be inclined, however, to admit medical records that address less complicated injuries.

McAllister's ability to testify will be addressed below.

### vii.    Racial Epithets

Defendants next seek to preclude Plaintiff from offering evidence that the Defendants used racial epithets or arguing that his arrest was somehow racially motivated. Plaintiff alleged in his Complaint that Defendant Craw had used a racial slur to explain what happens to people like Plaintiff when they run from police.  Evidence of the use of a racial slur, Defendants assert, is not relevant to whether they used excessive force and should be excluded.  Introducing such evidence would also be unduly prejudicial, Defendants claim.

The Court will deny the motion in this respect.  While Defendants are correct that racial animus is not relevant to whether they used excessive force, such motivations are relevant to whether Plaintiff is entitled to punitive damages.  In a case brought pursuant to Section 1983, as this one, "punitive damages may be awarded 'when defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" Vasbinder v. Ambach, 926 F.2d 1333, 1342 (2d Cir. 1991)(quoting Smith v. Wade, 461 U.S. 30, 56 (1983)).  Excessive force motivated by racial animus can justify a jury's award of punitive damages.  Lewis v. City of Albany Police Department, 547 F.Supp.2d 191, 210-211 (N.D.N.Y. 2008) (approving of jury's award of punitive damages when defendant's "use of excessive force .

15

. . was racially motivated and occurred while plaintiff was handcuffed[.]").

Thus, evidence that Defendants' conduct was motivated by racial animus is relevant to the damages Plaintiff seeks in this case, and the Court will deny the Defendants' motion in that respect.

### viii.   Economic Damages

Defendants next argue that Plaintiff should be precluded from seeking economic damages at trial because he did not provide any proof of such damages in discovery. Plaintiff responds that he is not seeking economic damages.

The Court will therefore grant the motion in that respect.  Plaintiff is precluded from introducing any evidence or argument regarding economic damages at trial.

### ix.   Byron English

Defendants seek to preclude any testimony from Bryon English, who allegedly witnessed the events in question, or introducing any of his statements made to the Citizen's Review Board.  Defendants claim that all the evidence in the case indicates that English did not witness the events in question, that he denied witnessing the events, and that he has no personal knowledge of them.  Plaintiff responds that he intends to call English.  He contends that English witnessed the incident and reported it to an investigator.

While Defendants point to deposition testimony and Plaintiff's statement of material facts in opposition to Defendants' motion for summary judgment to support their claim that English cannot offer any relevant testimony, Plaintiff is adamant that English can offer relevant testimony.  The evidence indicates that English did state he heard screaming

16

from inside his house.

The Court will permit English to testify, but the Court fully expects a vigorous cross examination if English offers testimony that contradicts any sworn statements, and expects objections to irrelevant testimony. Plaintiff is entitled to make out his case. If he chooses to introduce a witness who can testify only that he heard shouting, or who can easily be impeached, he may do so.

The motion will be denied in this respect.

### x.       Referring to Defense Counsel as City Attorneys

Defendant next move to preclude Plaintiff from referring to defense counsel as "City Attorneys," which Defendants claim would prejudice them, in part by implying to the jury that the City of Syracuse will pay any award made in this case. Plaintiff responds that he does not intend to refer to the Defendants' counsel as City Attorneys. The Court accepts this representation and will grant the motion as unopposed. Plaintiff's counsel shall not refer to Defendants' counsel as "City Attorneys."

### xi.       Indemnification

For similar reasons, Defendants seek to preclude Plaintiff from offering evidence or suggesting that Defendants will be indemnified by the City of Syracuse in this matter. Plaintiff responds that he does not intend to reference indemnification. The Court accepts that representation and will grant the motion as unopposed. Plaintiff's counsel shall not reference indemnification.

### xii.       Specific Dollar Amount

Finally, Defendants argue that Plaintiff should be prohibited from suggesting that

17

the jury award him a particular dollar amount, since doing so would encourage the jury to calculate a value for the case based on expectations set by the lawyers, rather than the evidence.  Plaintiff responds that he will not suggest a specific dollar amount to the jury. The Court accepts that representation and will grant the motion as unopposed.  Plaintiff's cousnel shall not suggest a specific dollar amount to the jury.

### xiii.   McAllister's Testimony

In responding to Plaintiff's motions, Defendants filed another motion in limine, which appears an attempt to clarify their grounds for seeking to exclude McAlister's testimony.  The Court will address the issue because Defendants raised it originally in their motions in limine and Plaintiff did not respond.  The Court would prefer, however, to have all the motions in limine at once, rather than being faced with a continual flow of such motions until the parties actually cross the threshold of the courtroom.

Defendants point out that Plaintiff identified Sara McAlister on his witness list, stating that she "will read the documents Correctional Care Services generated by hand and she is expected to testify as to any personal obeservations she made of the Plaintiff when he was in custody at the Justice Center.  She will not be asked to testify as an expert."  Defense counsel represents that Plaintiff's counsel recently represented that he does not intend to call McAlister.  Still, Defendants seek a ruling from the Court that recognizes that, as a fact witness, McAlister should be limited to testifying to matters within her personal knowledge.  Since she did not make the medical records about which she proposes to testify, and did not make the observations contained in them, she should not be permitted to testify on such matters.

The Court agrees.  As a fact witness, not an expert witness, McAlister should not

testify to matters outside her personal knowledge.  Should she testify, she will not be permitted to testify to anything outside her personal knowledge of the relevant events. The Plaintiff's motion is granted in this respect.

    **B.**   **Plaintiff's Motions**

        **i.**   **Evidence of Plaintiff's Prior Arrests that Did Not Lead to Conviction**

Plaintiff first seeks to preclude certain evidence about prior arrests.  Prior arrests that did not result in a conviction are not admissible pursuant to Rule 609, he claims. Medical records which Defendants may attempt to introduce indicate that he had been incarcerated at the Onondaga County Justice Center for an arrest unrelated to the incident that is the subject to the trial.  Plaintiff in the alternative argues that, if admitted, the medical records should be redacted to excise information on that arrest.  Defendants respond that they do not intend to introduce any evidence of prior arrests for impeachment purposes, but will only do so with convictions that satisfy Rule 609(a) and 609(b).  They also intend to offer evidence of previous arrests involving Officer Craw if Plaintiff testifies about his prior interactions.

The Court agrees that prior arrests in other matters are generally inadmissible to impeach a witness. The Court will grant the motion with respect to prior arrests that did not result in a conviction.   If, however, Plaintiff testifies to past interactions with Craw, Defendants may inquire into the prior arrests on cross-examination.  The Court will reserve in that respect.

        **ii.**   **Prior Arrests**

Plaintiff next seeks to preclude Defendants from impeaching Plaintiff with "specific

details of an arrests which was for a violation, a misdemeanor or which resulted in an ACD."  Defendants asked Plaintiff about such arrests at his deposition and he could not recall them "perfectly[.]" Defendants respond that they do not intend to impeach any witness because of "'imperfect' recollections of their prior arrests as demonstrated in their depositions."  They reserve the right, however, to impeach a witness "based on false testimony they give at trial on any subject."

This motion is not a model of clarity.  As the Court understands Plaintiff's request, he asks not to be impeached because of testimony about arrests that he did not fully recall during his deposition.  The Court lacks information sufficient to resolve this motion.  As a general matter, Plaintiff's deposition testimony speaks for itself.  If that testimony contradicts his trial testimony, Defendants are free to use it to impeach him.  Defendants may not, of course, introduce evidence of past arrests that did not result in a conviction to impeach Defendant's character for truthfulness.  See Fed. R. Evid. 609.  The Court will deny the motion with leave to renew at trial.

### iii.   Synopses

Plaintiff next contends that "[v]arious police documents generated by officers in the instant matter include what are essentially synopses of witness's statements."  These synopses, Plaintiff argues that the documents contain hearsay statements without any exception and not admissible for impeachment or as evidence.  Defendants respond that Plaintiff has not identified any particular document for the Court to evaluate.  Moreover, they point out, Plaintiff has a Syracuse Police Department Use of Force Report identified as an exhibit in his pre-trial papers.  Such a report would appear to be the sort of document he refers to here as a synopsis.

20

The Court will deny the motion with leave to renew.  The Court cannot rule on a motion that takes a general position on the admissibility of a type of document hearsay grounds.  Plaintiff must identify particular documents and explain why that document is inadmissible.  Plaintiff may of course object to the admission of any document or statement in a document on any appropriate ground at trial.

### iv.    Medical Records from the Onondaga County Justice Center

Plaintiff points out that Defendants have subpoenaed records from the Onondaga County Justice center for his "entire file . . . including, but not limited to, copies of any/all business records, notes, reports, bookings, intakes, photos, videos, and medical reocrds and notes that are on file[.]" These requests, he contends, are not limited to the records related to the incident that is the subject of the trial.  He requests that the Court limit introduction of such records to records from "the night of the incident and shortly thereafter."  Otherwise, he claims, Defendants could "back door, accidentally or otherwise, introduction of inadmissible arrest through said records."  Defendants respond that Plaintiff claims exacerbation of previous injuries because of their conduct, and previous medical records are therefore relevant to the case.  They relate that any records they admit will be redacted to insure that they do not reveal Plaintiff's previous arrests.

The Court finds that the records, as described, could clearly be relevant to Plaintiff's claims.  If he suffered a previous injury, evidence of that previous injury is relevant to both causation and damages.  At the same time, the Court has seen no such records.  The Court will therefore deny the motion with leave to renew when Defendants actually attempt to introduce the records.  The Court directs the Defendants to remove information from those records that would identify Plaintiff's past arrests before attempting

21

to admit them.

### v.    Witnesses Not Disclosed During Discovery

Plaintiff next seeks to preclude Defendants from introducing any witnesses not disclosed during discovery.  Defendants point out that Plaintiff has not pointed to any witness not identified during discovery.  As such, they claim, the Court has no basis to rule on the motion, and should deny it.

The Court agrees with the Defendants that Plaintiff has failed to identify a witness who Defendants intend to call not identified in discovery.  The Court will deny the motion with leave to renew if need arises at trial.

### vi.    Witnesses and Evidence Regarding Plaintiff's Criminal Case

Plaintiff contends that "[a]s the case being tried is exclusively for excessive force and failure to intervene to prevent the use of said force, no witnesses with evidence solely relevant to the criminal case against" Plaintiff "should be allowed to testify."  He contends that he does not intend to contest his convictions, and that any witnesses related only to those convictions should be excluded.  Defendants respond that the events that led to Plaintiff's convictions are relevant to the decisions the jury must make on excessive force and failure to intervene, since they need to know why the officers stopped defendant initially, why the pursued him, and what happened when they caught up to him.

The Court, as explained above, agrees that the traffic stop and the events that followed it are relevant to understand whether the force used against Plaintiff was relevant under the circumstances.  Testimony concerning Plaintiff's crimes will inevitably come before the Court in describing those events.  A blanket prohibition on any evidence

22

concerning Plaintiff's criminal case cannot exist.  Plaintiff's motion does not identify any particular pieces of evidence which she be prohibited as a result of this portion of the motion.  The Court will therefore deny the motion.  At the same time, either side may always object to the relevance of any evidence that is not relevant to the questions the jury must answer.

### vii.   Documents Not Disclosed in Discovery

Plaintiff next contends that the Court should preclude Defendants from introducing any documents not produced in discovery.  Defendants point out that Plaintiff has not identified any documents not produced during discovery pursuant to any demand, and that Plaintiff can subpoena any document he deems necessary for trial to the same extent Plaintiff could.

Because Plaintiff has not identified any document that has not been provided, the Court will deny the motion.  Plaintiff may renew his motion if the need arises at trial.

### viii.   Working copies of All Recordings

Plaintiff reports that "[e]fforts to obtain working copies of the Justice Center video have not succeeded."  He requests that the Court order Defendants to produce such a copy of the video if they intend to offer it at trial.

Defendants respond that, since they obtained the video from the Justice Center and did not create it themselves, they bear no responsibility for the condition of the document.  Plaintiff could have worked with the Justice Center to obtain a copy in a useable format or contacted the software provider.  Counsel relates that she provided Plaintiff with a copy of the video in the format he prefers on June 22, 2022.

Because Plaintiff now has a usable copy of the video in question, the Court will deny the motion as moot.

### ix.    Time to Bring Case to Trial

Plaintiff next requests that the Court inform the jury that it should not assume that Plaintiff is responsible for the delay in bringing the case to trial, but leave it to the Court as to how to so inform them.

Defendants respond that Plaintiff's motion is a request to instruct the jury and not a motion in limine.  The Court agrees and will deny the motion with leave to renew at an appropriate time during the trial.

### x.    Termination of Defendants

Finally, the Plaintiff seeks an order precluding Defendants from aruging to a jury that a verdict against them could lead to their termination.

Defendants respond that they do not intend to offer any such evidence.  The motion is therefore granted as unopposed.

## IV.    CONCLUSION

For the reasons stated above, the parties' motions in limine are granted in part, denied in part, and reserved in part, as follows.

The Defendants' motion, dkt. # 83, is hereby GRANTED IN PART, DENIED IN PART, and RESERVED IN Part:

1.    Motion #1 is granted with respect to Plaintiff's felony convictions and denied in all other respects;

2.    Motion #2 is granted to the extent that Plaintiff is precluded from

24

introducing evidence or argument that he did not possess drugs or flee from police either in a car or on foot and reserved in all other respects;

3.      Motion #3 is granted in part, and Plaintiff is precluded from introducing CRB reports in his case in chief.  The Court reserves on whether such documents could be introduced for impeachment purposes;

4.      The Court reserves decision on motion #4;

5.      Motion #5 is denied;

6.      Motion #6 is granted in party and denied in part and reserved in part. Plaintiff may testify to his personal knowledge of his pain and suffering, but shall not testify to any particular diagnosis or prognosis The Court reserves on the admissibility of the medical records;

7.      Motion #7 is denied.

8.      Motion #8 is granted.  Plaintiff is precluded from introducing any evidence or argument regarding economic damages;

9.      Motion #9 is denied.

10.     Motion #10 is granted.  Plaintiff shall not refer to defense counsel as "City Attorneys";

11.     Motion #11 is granted.  Plaintiff is precluded from mentioning any indemnification that may be available for Defendants; and

12.     Motion # 12 is granted.  Plaintiff is precluded from suggesting a specific dollar amount in damages to the jury.

Defendants' additional motion, dkt. # 119, is hereby GRANTED in part and DENIED

In part.  McAllister is precluded from testifying to matters outside her personal knowledge if she testifies.  She may testify to matters within her personal knowledge.

Plaintiff's motion is granted in part denied in part, and denied with leave to renew in part, as follows:

1.   Motion # 1 is granted in part and reserved in part.  The motion is granted with respect to Plaintiff's prior arrests.  Plaintiff's are precluded from introducing evidence or argument about Plaintiffs' prior arrests that did not result in conviction.  The Court reserves on whether Defendants could introduce such evidence for impeachment purposes;

2.   Motion #2 is denied with leave to renew at trial;

3.   Motion #3 is denied with leave to renew at trial;

4    Motion #4 is denied with leave to renew at trial;

5.   Motion #5 is denied with leave to renew at trial;

6.   Motion #6 is denied with leave to renew at trial;

7.   Motion #7 is denied with leave to renew at trial;

8.   Motion #8 is denied as moot.

9.   Motion #9 is denied with leave to renew at trial.

10.  Motion #10 is granted.  Defnedants are hereby precluded from introducing evidence or argument that Defendants could lose their jobs as a result of this litigation.

**IT IS SO ORDERED.**

26

Thomas J. McAvoy
Senior, U.S. District Judge

**Dated:**        **August 22, 2022**